UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA ANN ROBBINS,

                              Plaintiff                    DECISION AND ORDER

-vs-                                                       6:18-CV-6592 CJS

ANDREW M. SAUL,
Commissioner of Social Security,

                              Defendant.
_____

## APPEARANCES

For the Plaintiff:          Gregory T. Phillips
                            Segar & Sciortino PLLC
                            400 Meridian Centre, Suite 320
                            Rochester, New York 14618

For the Defendant:          David L. Brown
                            Social Security Administration
                            Office of General Counsel
                            26 Federal Plaza, Room 3904
                            New York, New York 10278

                            Kathryn L. Smith
                            U.S. Attorney's Office
                            100 State Street
                            Rochester, New York 14614

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Barbara Robbins for Social Security Disability Insurance

("SSDI") benefits.   Now before the Court is Plaintiff's motion (ECF No. 12) for judgment on

the pleadings and Defendant's cross-motion (ECF No. 13) for the same relief.   For the

1

reasons discussed below, Plaintiff's application is denied, Defendant's application is granted, and this action is dismissed.

FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and lengthy procedural history of this action. The Court will summarize the record only as necessary for purposes of this Decision and Order.

The instant action focuses on a decision issued on January 17, 2018, by an Administrative Law Judge ("ALJ") finding that Plaintiff was not disabled at any relevant time. (Record ("R.") 10–19).[1] In pertinent part, the ALJ found that Plaintiff had severe impairments consisting of "lumbar disc disease; left shoulder impingement; left knee meniscus repair; basal joint arthritis; tennis elbow; obesity; and diabetes mellitus," and non-severe impairments consisting of "bunions and a grief related mood disorder." (R. 13). Despite those conditions, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [T]hrough the date last insured, the claimant had the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant is [only] occasionally able to stoop, kneel, crouch, crawl, and climb stairs. She is not able to balance. She can occasionally reach, handle and finger. She need[s] to have the opportunity to change position every forty-five minutes, e.g., she c[an] sit for forty-five minutes and then need[s] to stand and stretch for a few minutes.

(R. 14). The ALJ further found that Plaintiff could not perform her past relevant work, but that she could perform other work that was identified by a vocational expert ("VE"). Following Plaintiff's unsuccessful appeal to the Appeals Council, the ALJ's decision is now

---

[1] Unless otherwise noted citations are to the Administrative Record.

the Commissioner's final decision.

Significantly, for purposes of this action, the ALJ determined that Plaintiff's impairments would not cause her to miss so much work that she would be unemployable. At the hearing, after the VE identified particular jobs that a hypothetical claimant (with the RFC ultimately found by the ALJ) could perform (R. 414), Plaintiff's attorney asked the VE what number of medical absences would make a claimant unemployable in those jobs, and the VE responded that a claimant could miss "up to two full days per month" and still maintain employment:

> ATTORNEY: What would the absenteeism, the permissible absenteeism for the types of jobs that you've identified in response to question 10, what would be the expected tolerance for absenteeism in those positions?
>
> VE: So, on a regular sustained basis it would be up to two full days per month.

(R. 45-46). The VE further clarified that by "two full days" he was referring to "the equivalent of two full shifts, two eight hour shifts per month." (R. 46). The ALJ referred to this testimony in his decision and found that Plaintiff would not miss more than the allowable number of days of work, stating:

> At the supplemental hearing, the claimant's representative questioned whether the claimant would be able to sustain employment if she were to be absent from work [more than two days per month]. Although [the vocational expert ("VE")] testified that the claimant would be unable to sustain employment under such circumstances, I find that the record does not support such a restrictive residual functional capacity assessment. The claimant has the residual functional capacity to attend work on a regular basis.

(R. 18).

Plaintiff now contends that the ALJ's finding concerning her absenteeism from work is not supported by substantial evidence. According to Plaintiff, "[t]he Commissioner failed to properly consider that Plaintiff's frequent need for medical treatment, including surgeries, would have caused her to be absent from work far in excess of what is generally tolerated in competitive employment[.]"[2] On this point, Plaintiff observes that "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a **regular and continuing** basis, [and] a 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."[3] Plaintiff further indicates that the alternative jobs identified by the ALJ at step 5 of the sequential evaluation would allow "no more than two full absences from work per month," according to the VE.[4] However, Plaintiff maintains that the record indicates that she would have missed more than two days of work per month due to her impairments during the 21-month period at issue before the ALJ, namely, March 29, 2012 (the alleged disability-onset date) through December 31, 2013 (her last-insured date).[5]

In support of this argument, Plaintiff calculates that according to the VE's testimony, the allowable number of absences during the relevant 21-month period would have been "42 lost work days."[6] Plaintiff then indicates that she had "four surgical procedures" during that period, namely: 1) a "laparoscopic gastric bypass procedure for her morbid obesity condition" on August 9, 2012; 2) a "pulley release with flexor tenosynovectomy and

_____

[2] Pl. Memo of Law [#12-1] at p. 7.
[3] Pl. Memo of Law [#12-1] at p. 8 (emphasis in original).
[4] Pl. Memo of Law [#12-1] at p. 9.
[5] Pl. Memo of Law [#12-1] at p. 9.
[6] Pl. Memo of Law [#12-1] at p. 9.

excision of multilobular flexor sheath ganglion cyst procedure on her left hand" on November 28, 2012; 3) a "left knee arthroscopy with partial menisectomy" on April 25, 2013; and 4) a "right thumb basil joint athroscopy with tendon transfer" on October 18, 2013. Plaintiff does not indicate how long her actual recuperation period was for each of those procedures. Plaintiff, though, argues that "if" the recuperation period for each procedure was 30 days, then she would have missed more than 42 days during the relevant period.

Alternatively, Plaintiff lists forty-five (45) medical appointments (including the aforementioned surgical procedures) referenced in the record during the relevant 21-month period. All but thirteen (13) of those appointments were either office visits or independent medical examinations ("IMEs"). The remaining thirteen appointment consist of the four surgical procedures already mentioned, along with nine (9) office visits at which some type of treatment was received. Those treatments consisted of a "radiofrequency lumbar medial branch neuolysis procedure"; a "gastroscopy procedure under sedation"; "an epidural injection [in the] lumbar spine"; another "radiofrequency lumbar medial branch neurolysis procedure"; an "MRI of [the] left knee"; a "radiofrequency ablation procedure to [the] lumbar medial branch"; a "lidocaine injection into [the] left shoulder"; a "sacroiliac joint injection procedure"; and a "lumbar epidural steroid injection."[7] Plaintiff does not indicate how long each of those visits lasted. Nevertheless, Plaintiff contends that she "had approximately 50 days with notable 'medical events' during the 21-month period at issue in this claim," and that "[o]n each of those days, she would have had to have been absent for

---

[7] Pl. Mem. of Law [#12-1] at p. 14.

all or part of the workday."[8] Plaintiff therefore maintains that she exceeded the acceptable number of absences during the relevant period and that the ALJ erred in failing to find that she was disabled. (R. 42).

Defendant responds that Plaintiff's argument lacks merit and that the ALJ's decision is supported by substantial evidence. Defendant maintains, first, that Plaintiff has the burden to establish disability, and that she therefore had the burden to show that her absences exceeded the allowable number identified by the VE. Defendant further indicates that apart from the absences "surrounding the laparoscopic bypass surgery on August 9, [2012] through August 11, 2012, hand surgery on November 28, 2012, arthroscopic knee surgery on April 25, 2013, [  ] right hand surgery on October 18, 2013, [and] the gastroscopy procedure on August 1, 2012," Plaintiff "has not shown that she was required to be absent from work an entire day, or even to be absent at all, and has not explained why she could not have seen the doctors outside of work hours." Def. Memo of Law [#13-1] at p. 5 (citations to record omitted).

The Court has considered the record and the parties' submissions.

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence

---

[8] Pl. Mem. of Law [#12-1] at pp. 14–15.

is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

<u>Plaintiff Has Not Shown That the ALJ Erred in Finding that She Could Attend Work Regularly Despite Her Impairments</u>

Plaintiff maintains that the ALJ erred in failing to consider that the frequency of her medical appointments would make her unable to maintain regular employment.   In this regard, Plaintiff refers to the VE's testimony that a claimant who was absent from work more than two full days per month would be unemployable.   Plaintiff further contends that

the record indicates she would have missed more than two days of work per month during the relevant 21-month period under consideration in this action. Consequently, Plaintiff maintains that the ALJ's determination that she was capable of performing other work on a sustained basis is not supported by substantial evidence.

However, the Court agrees with Defendant that the record does not support Plaintiff's argument.[9] Indeed, while Plaintiff alludes to "approximately 50" "notable 'medical events'" during the relevant 21-month period, she lists only forty-five such events, most of which were office visits. More specifically, of those forty-five events, twenty-four were simple office visits, designated as "follow-up" visits or visits to discuss treatment options. As for the other events, six were IMEs related to a motor vehicle accident or to Plaintiff's SSDI application; two were office visits at which Plaintiff had sutures removed; nine were office visits at which Plaintiff received some type of treatment such as a pain injection; and four were surgery dates.[10]

Contrary to Plaintiff's position, this information does not indicate that she missed more than 42 days of work during the relevant period. The record does not indicate, for example, that any of the office visits mentioned earlier resulted in her missing any work, let alone a "full day" of work. *See*, *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("As

---

[9] For purposes of this Decision and Order only, the Court will assume *arguendo* that Plaintiff is correct to argue that she can demonstrate disability by showing that she would miss too much work due to medical appointments. *But see, Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) ("[W]e are unpersuaded by Cherkaoui's argument that the excessive number of medical appointments she attended rendered her disabled. For starters, whether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments. *See* SSR 96-8p. The number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities.").

[10] *See*, Pl. Mem. of Law [#12-1] at pp. 10–14.

for his doctors' appointments, Best has not shown that they would preclude him from working. The vocational expert testified that employers generally tolerate up to three absences per month, and Best cannot point to anything in the record to suggest that his appointments would require him to miss a full day of work or that he could not schedule his appointments outside of working hours."); *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) ("[T]he ALJ did not err by failing to consider plaintiff's absenteeism. No such evidence was presented at the hearing, and plaintiff's current extrapolation of how many days she must have missed from work based on her medical record is faulty both in that it is not limited to time missed due to her back impairment, neuropathy, and heart condition, and in that it assumes she was required to miss entire days of work for each appointment."); *Campbell v. Colvin*, No. 14 CIV. 5385 KPF, 2015 WL 5311239, at *11, n.13 (S.D.N.Y. Sept. 11, 2015) ("[W]hile Campbell has had numerous medical procedures and doctors' visits, no evidence has been presented to show that such interruptions preclude his keeping a generally normal schedule."); *Chestine G. v. Saul*, No. 18 C 4980, 2020 WL 1157384, at *9 (N.D. Ill. Mar. 10, 2020) ("In essence, Chestine argues that her medical appointments necessitated that she would consistently be absent from work more than 12-18 days per year, but she has not met her burden to show that her primary care physician appointments and physical therapy and chiropractor treatments preclude her from working. Putting aside the ALJ's appropriate rejection of Dr. Griffin's finding that Chestine would likely miss more than four days of work per month, Chestine did not identify any evidence demonstrating that medical appointments would interfere with a full-time retail position and that she would be unable to schedule those routine appointments during non-working hours."); *Martin v. Berryhill*, No. 7:16-CV-260-KKC, 2018 WL 1571906, at *4 (E.D. Ky. Mar.

9

30, 2018) ("Martin claims the ALJ failed to properly consider her absenteeism necessitated by her doctor's appointments. But Martin has not identified any evidence on the record that the length of these appointments would require her to miss work."). Nor does the record indicate that Plaintiff's surgical procedures resulted in her missing more than the acceptable number of days of work.   Consequently, the Court finds that Plaintiff's argument lacks merit.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is denied, Defendant's cross-motion (ECF No. 13) for the same relief is granted, and this matter is dismissed.   The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
        March 25, 2020

                                    ENTER:


                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge